UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

RYAN MICHAEL LEE DOMBROSKI,      6:09-cv-6284-TC

            Plaintiff,

    v.      OPINION AND ORDER

CITY OF SALEM, Salem POLICE
DEPARTMENT, OFFICER ROBERT
PIONTEK; & JOHN DOES I-X

            Defendant.

COFFIN, Magistrate Judge:

Plaintiff Ryan Michael Lee Dombroski brings this action alleging various federal and state law claims against Salem Police Officer Robert Piontek, Officer Piontek's unnamed supervisors (John Does I-X), the Salem Police Department, and the City of Salem. Defendants have moved for summary judgment (dkt # 36) on all of plaintiff's claims. On March 19, 2012, plaintiff filed a Stipulated Notice (dkt # 43) dismissing all claims against Officer Piontek and John Does I-X. The Stipulated Notice of Dismissal disposes of many of plaintiff's claims, leaving only the federal and state law claims against the City of Salem and Salem Police Department for me to consider in

Page 1 - OPINION AND ORDER

deciding defendant's Summary Judgment Motion. At defendant's request, Oral Argument was set for this matter on April 11, 2012. I find, however, that oral argument is not necessary, and vacate the April 11 hearing. For the reasons set forth below, I grant defendant's motion in part and remand plaintiff's remaining state law claims to state court.

## Background

On October 20, 2007, at approximately 8:30 p.m., plaintiff and about eight or nine of his friends arrived in downtown Salem for plaintiff's twenty-first birthday. The group began the night at Pete's Place Bar, where plaintiff consumed a few beers. After about a half hour, plaintiff and his friends moved to another downtown Salem bar, The Brick. One half hour later, and without having any alcoholic beverages in the meantime, plaintiff and his friends moved on to the bar next door, the Big Kahuna. Plaintiff consumed two beers during the 30-45 minutes that he remained at this establishment. The final stop was the Ultra Six Lounge. At this point, plaintiff reported an evening total of 5-6 beers. Approximately 15-20 minutes into his stay at the Ultra Six, plaintiff attempted to order another drink but was informed by the bartender that he would not be receiving any more alcohol and needed to leave. Although it is unclear exactly why the bartender asked plaintiff to leave the Ultra Six, plaintiff assumes it was because he appeared "too drunk" to be served. Plaintiff has trouble recalling the exact details of his removal from the Ultra Six, but does remember being escorted to the exit by a bouncer. After he was outside, plaintiff became angered by the fact that he was removed from the bar, so he uttered some general profanities and then kicked over a newspaper stand that was outside the bar.

Just as plaintiff kicked over the newspaper stand, Officer Piontek drove past the Ultra Six as part of his routine patrol of the downtown Salem district. Officer Piontek was in uniform and was

Page 2 - OPINION AND ORDER

driving in a marked police car. Along with Officer Piontek was a civilian ride-a-long, Charles Thorn. Officer Piontek observed the plaintiff kick over the newspaper stand, and then watched as plaintiff walked away from the stand to go speak with a friend. Plaintiff's apparent intoxication and belligerent state caused Officer Piontek to become concerned. After seeking some corroboration from Mr. Thorn about what Officer Piontek had just observed of the plaintiff, Officer Piontek stopped and parked his patrol car.

As plaintiff was talking with his friend outside of the Ultra Six, he was facing his friend, and behind his friend was a wall. Officer Piontek approached the plaintiff from behind and grabbed plaintiff on the shoulder. According to plaintiff, he was unsure of who was grabbing him from behind, so he did not react right away to the presence of Officer Piontek. Plaintiff contends that when he finally did recognize that it was a police officer attempting to get his attention, he turned around and put his hands in the air. Officer Piontek on the other hand, asserts that he immediately made his presence known to the plaintiff by introducing himself as a police officer, and provided specific instructions for the plaintiff to remove his hands from his pockets. Officer Piontek further claims that plaintiff failed to follow the Officer's instructions, and instead directed profanities toward Officer Piontek in response. However, neither Officer Piontek nor plaintiff dispute the following fact: that not long after coming into contact with plaintiff, Officer Piontek administered a taser cycle on plaintiff.

Officer Piontek employed the taser cycle in "air dart mode," and this first cycle lasted a few seconds. This first cycle caused plaintiff to fall backward onto the ground, placing plaintiff face down onto the cement. Meanwhile, a group of plaintiff's friends assembled outside the Ultra Six in order to watch the commotion between Officer Piontek and plaintiff. Seeing their friend on the

Page 3 - OPINION AND ORDER

ground, many of the members of the crowd became unruly and started yelling at Officer Piontek to leave plaintiff alone. Plaintiff contends that he remained motionless on the ground and was submissive at all times throughout the duration of the taser episode. However, Officer Piontek alleges that after this first taser cycle, plaintiff continued to resist Officer Piontek, and so a second taser cycle was activated on plaintiff. The crowd of plaintiff's friends grew more and more unruly, and the escalation of excitement in the surroundings reportedly made Officer Piontek very concerned for his own safety. Officer Piontek contends that after the second taser cycle, he instructed plaintiff to put his arms out to his side and away from his body. Plaintiff allegedly failed to comply with Officer Piontek's requests, so Officer Piontek ran a third taser cycle on plaintiff. By this point, several other police officers had arrived. Officer Piontek then handcuffed a subdued plaintiff and transported him to Marion County Jail.

Plaintiff acquired criminal charges of disorderly conduct, resisting arrest, and assaulting a police officer. However, these charges against plaintiff were later dismissed due to the prosecutor being determined unprepared for trial under ORS 136.120. After the charges were dismissed, plaintiff brought this action in Marion County Circuit Court against Officer Piontek, Officer Piontek's unnamed supervisors (John Does I-X), the City of Salem, and the Salem Police Department, alleging eight theories of liability against defendants. All eight theories of liability stem from plaintiff's main contention that Officer Piontek used excessive force against him in violation of plaintiff's rights under federal and state law. The defendants properly removed this case to Federal Court. As noted, the Stipulated Notice of Dismissal disposed of the claims against Officer Piontek and his supervisors, and only the claims against the City of Salem and the Salem Police Department remain.

Page 4 - OPINION AND ORDER

## Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## Discussion

### A. Claims Against Salem Police Department

Plaintiff brings 42 U.S.C. § 1983 claims as well as state law claims against the Salem Police Department. However, legal precedent establishes that certain municipal or governmental units, such as city police departments, are generally not subject to § 1983 liability. Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995). Oregon, along with many other jurisdictions, has held that any claim of liability against a police department must be brought against the city itself. Keller v. City of Portland, 1998 WL 1060222 at *3 (D. Or. 1998). Courts reason that because a city police department is not a separate entity from the city itself, it is not amenable to suit. Id.

I find that as a matter of law, plaintiff cannot pursue legal claims against the Salem Police Department. Oregon law requires that such claims be brought against the City itself. Therefore, the Salem Police Department is not a proper defendant and I dismiss all claims against it.

### B. Claims Against City of Salem

Plaintiff brings § 1983 claims against defendant City of Salem. Specifically, plaintiff claims that the City of Salem caused his alleged constitutional deprivations because the City of Salem had actual and constructive notice that the failure to provide adequate screening, training, and supervision to its employees regarding the proper use of force and tasers would foreseeably result in the violation of the constitutional rights of citizens. (Pl. Compl. ¶¶ 37-42 doc #1). Plaintiff further alleges that the City of Salem was deliberately indifferent in screening, training, and supervising its employees regarding the proper use of force and the proper use of tasers. (Pl. Compl. ¶¶ 38-41 doc #1). Finally, plaintiff asserts that the City of Salem had a custom, pattern, and practice of using excessive force in situations involving tasers. (Pl. Compl. ¶¶ 37-42 doc #1).

A municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Collins v. City of Harker Heights, 503 U.S. 115, 123 (1992) (emphasis in the original). It is only when "the execution of the government's policy or custom... inflicts the injury" that the municipality may be held liable under § 1983. Id., (quoting Monell, 436 U.S. at 694). The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer. Id., 503 U.S. at 122. There must be evidence of a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. City of Canton v. Harris, 489 U.S. 378, 382 (1989).

Here, the plaintiff argues in essence that the City of Salem had a policy and/or custom of inadequate training, screening, and supervision of police officers and their use of tasers and that this caused plaintiff's alleged constitutional deprivation. The Supreme Court has held that inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. Id. 489 U.S. at 388. Such a failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury. Id. at 391. Merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible is insufficient for establishing municipal liability under § 1983. Id. at 390. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. Id. at 391. An ability to point to something the city "could have done" to prevent the unfortunate accident is not enough to confer liability on the city. Id. at 391-92.

Page 7 - OPINION AND ORDER

Despite alleging that the City of Salem has established a pattern and/or custom of failing to adequately train, supervise, and screen its police officers and their use of excessive force and tasers, plaintiff has not pleaded any facts or made any assertions that indicate what specific unconstitutional training, supervision, or screening practices and/or policies caused his injury. Moreover, plaintiff has failed to allege any facts that establish that the City of Salem was deliberately indifferent to the constitutional rights of its citizens when the City created its training, supervising, and screening programs. A mere allegation that an inadequate training program exists, and that such a program represents a policy for which the city is responsible, is insufficient for establishing § 1983 liability against a city. Without more material facts to support his allegations, plaintiff's vague assertions that the City of Salem employs "unconstitutional policies or practices" cannot withstand summary judgment. I, therefore, find that summary judgment is appropriate for plaintiff's Monell claims against the City of Salem.

### C. State Claims Remand

Under 28 U.S.C. § 1368(c)(3), a district court may decline to exercise jurisdiction over a supplemental state court claim if "the district court has dismissed all claims over which it has original jurisdiction...." The Supreme Court has stated that a district court should not retain jurisdiction over a case containing only state law claims if it violates values of economy, convenience, fairness or comity. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). When all federal claims are eliminated from a case prior to trial, these factors generally dictate that the district court should remand any remaining state law claims. Id. at n. 7.

Here, I have found that summary judgment is appropriate on all of plaintiff's federal claims in this action. The only remaining claims are plaintiff's state claims of negligence, battery, and

Page 8 - OPINION AND ORDER

assault. With all federal claims eliminated from this action, I find that it is proper to remand plaintiff's state law claims to state court.

## Conclusion

The oral argument set for April 11, 2012 (dkt # 41) is vacated. The defendant's motion for summary judgment (dkt # 37) is granted as to all federal claims. The defendant's motion for summary judgment on the issues of negligence, assault, and battery is denied. The remaining negligence, battery, and assault claims are remanded to state court. The Clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED

DATED this 26th day of March 2012 .

_____
THOMAS M. COFFIN
United States Magistrate Judge